IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CA No. 3:22-cv-456

| | |
|---|---|
| ALEXANDER JOYNER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| FISERV, INC. and FISERV SOLUTIONS, LLC, | ) ) ) ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION TO STAY AND COMPEL ARBITRATION[1]**

Defendants Fiserv, Inc. and Fiserv Solutions, LLC ("Fiserv" or "Defendants"), by and through their undersigned counsel, and pursuant to Federal Rules of Civil Procedure 12(b)(1), (3) and (6), Local Rule 7.1, and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-4, submit this *Memorandum in Support of their Motion to Dismiss or in the Alternative Motion to Stay and Compel Arbitration* as required by the terms of the arbitration provision contained in the *2021 Fiserv Sales Compensation Terms, Conditions and Acknowledgement* (the *"2021 Terms and Conditions"*) document executed by Defendants and Plaintiff Alexander Joyner ("Joyner" or "Plaintiff"). (See, Keeter Dec., Ex. B).

---

[1] In support of the instant motion, Defendants filed the Declarations of: Michael Keeter, Vice President of Sales Compensation for Fiserv Solutions; James Vitaletti, Cyber Security Investigator for Fiserv Solutions; and H. Bernard Tisdale III, counsel for Defendants. References to the content of their declarations are "Keeter Dec.," "Vitaletti Dec.," and "Tisdale Dec.," respectively.

1

I.  **FACTUAL BACKGROUND**[2]

   A.  **The Parties and Plaintiff's Claims**

Fiserv is a provider of technology solutions for financial services institutions. (Keeter Dec. ¶ 3). Its products and services include information management and electronic commerce systems for its financial services clients, which include banks, credit unions, investment, and brokerage firms, and other financial sector businesses. *Id.* Fiserv Solutions, LLC is a wholly owned subsidiary of and the employing entity for Fiserv, Inc. *Id.*

Plaintiff, a resident of North Carolina, began working for Fiserv on September 9, 2019, as a business consultant. (Keeter Dec. ¶ 6). Fiserv discharged Plaintiff on August 17, 2021. *Id.*

Plaintiff alleges Fiserv terminated his employment because of his race and/or national origin. (D.E. # 1, ¶ 31). Plaintiff also alleges he was not paid his full compensation in his final paycheck. (D.E. # 1, ¶ 30). In that regard, Plaintiff alleges Fiserv is in violation of: Title VII for race and national origin discrimination and retaliation (D.E. # 1, ¶¶ 33-38); Section 1981 for race discrimination and retaliation (D.E. # 1, ¶¶ 40-43); North Carolina Public Policy for wrongful discharge (D.E. # 1, ¶¶ 45-48); and the North Carolina Wage and Hour Act for failure to pay wages owed (D.E. # ,1 ¶¶ 50-53). Following the filing of the instant motion and supporting memorandum, Fiserv filed an answer denying Joyner's allegations.

   B.  **Arbitration Agreement Between Plaintiff and Fiserv**

Fiserv issues a new sales compensation plan each year, typically in February of the calendar year to which the plan applies. (Keeter Dec. ¶ 7). To receive the incentive compensation described in the sales compensation plan, employees like Joyner are required to execute a *Terms and*

---

[2] Allegations in the Complaint (D.E. # 1) are presumed true only for the purposes of this Memorandum.

*Conditions* document which controls the circumstances under which incentive compensation is paid. *Id.* Fiserv's *2021 Terms and Conditions* document contains an arbitration provision at Section 12.9. (Keeter Dec., Ex. B).

According to Section 1 of the *2021 Terms and Conditions*, a "Participant cannot earn and be paid compensation under the Plan until all requirements of these Terms and Conditions and the Plan's provisions have been fulfilled . . ." (Keeter Dec., Ex. B). Furthermore, participant employees are "not eligible to earn or receive any payment under the Plan until after Participant has electronically signed the Acknowledgment included either in these Terms and Conditions or in the Sales Compensation Portal." *Id.*

The arbitration provision found in section 12.9 of the *2021 Terms and Conditions* provides as follows:

> As a condition of Participant' [sic] participation in the Plan, Participant and Fiserv agree that any claim, controversy or dispute between Participant and Fiserv relating in any way to Participant's employment, compensation (including Participant's compensation under the Plan and/or these Terms and Conditions), other terms and conditions of employment, termination of employment, or the interpretation of these Terms and Conditions or the Plan, whether sounding in contract, statute, tort, fraud, misrepresentation, discrimination, retaliation or any other legal theory, under any federal, state, or local law or regulation, whenever brought or amended, shall be resolved by binding arbitration in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association (the "AAA"), as modified by applicable law and the terms of these Terms and Conditions and the Plan's provisions.

(Keeter Dec., Ex. B). This mutual agreement to arbitrate disputes and claims includes, but is not limited to:

> claims or causes of action relating to the Participant's application, hiring, employment, resignation, discharge, termination, and wages . . ., whether sounding in contract, statute, tort, fraud, misrepresentation, discrimination, common law or any other legal theory, claims under Title VII of the Civil Rights Act of 1964, as amended; . . .; claims under 42 U.S.C. Sections 1981, . . .; and any claims under any other federal, state, or local law or regulation governing employment.

3

Case 3:22-cv-00456-FDW-DSC   Document 8-1   Filed 12/22/22   Page 3 of 14

*Id.*

According to Fiserv's business records, Michael Keeter emailed Fiserv's *2021 Sales Compensation Plan* to Joyner on February 12, 2021, at 1:16 pm, with instructions on how to electronically execute the *2021 Terms and Conditions* via online software called SignNow. (Vitaletti Dec., ¶¶ 10, 11). The email informed Joyner that the *2021 Terms and Conditions* included an arbitration provision. (Keeter Dec. ¶ 9(a)), (Vitaletti Dec., Ex. B). Thereafter, Joyner electronically executed Fiserv's *2021 Terms and Conditions* document on March 1, 2021. (Keeter Dec. ¶ 12).[3]

Before filing the instant motion, the undersigned counsel for Defendants emailed Joyner's counsel attaching a copy of the *2021 Terms and Conditions* and asking if Joyner would pursue his claims against the company in arbitration. (Tisdale Dec., Ex. A). Joyner's counsel responded stating: "Mr. Joyner does not recall ever signing the document you attached. It appears to be an electronic signature, but there is not verification or authentication information to in any way determine who signed the document or when. We will oppose any effort to compel arbitration, accordingly." *Id*.

This matter is now before the Court because Joyner has refused to comply with the arbitration provision of the *2021 Terms and Conditions* and submit his claims to arbitration. For the reasons discussed below, Plaintiff's arguments against complying with the arbitration provision of the *2021 Terms and Conditions* are meritless, and Defendants ask that the Court grant Defendants' motion to compel arbitration.

---

[3] Fiserv utilized the same email and electronic document execution process it utilized in the prior year. Attached as Exhibit A to Vitaletti's Declaration is a copy of Fiserv's February 3, 2020 email to Joyner containing Fiserv's 2020 *Sales Compensation Plan*, instructions on how to electronically execute the *2020 Terms and Conditions*, and the hyperlink for accessing the *2020 Terms and Conditions* and executing the document.

## II. LEGAL STANDARDS

### A. The Federal Arbitration Act

The Federal Arbitration Act ("FAA") provides arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983). As the United States Supreme Court reaffirmed, the FAA "establishes a liberal federal policy favoring arbitration agreements," including those between employer and employee. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (upholding the validity of individualized arbitration agreements between employer and employee and concluding the same did not violate the National Labor Relations Act). "Not only did Congress require courts to respect and enforce agreements to arbitrate; it also specifically directed them to respect and enforce the parties' chosen arbitration procedures." *Id.*

Under the FAA, federal courts must stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. The FAA also authorizes federal courts to issue an order compelling arbitration if there has been a failure to comply with an arbitration agreement. *See* 9 U.S.C. § 4. The Supreme Court has often observed the FAA "requires courts rigorously to enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted." *Epic Sys.*, 138 S. Ct. at 1621 (italics and quotation marks omitted).

A court's evaluation of a motion to compel arbitration under the FAA is limited. *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999). Specifically, a court must only determine: (1) whether a valid agreement to arbitrate exists between the parties, and (2) whether the dispute falls within the substantive scope of the arbitration agreement. *Id.* "If the issues in the case are within the contemplation of the arbitration agreement, the FAA's stay-of-litigation provision is mandatory, and there is no discretion vested in the district court to deny the stay." *United States v. Bankers Ins. Co.,* 245 F.3d 315, 319 (4th Cir. 2001).[4]

### B. North Carolina's Uniform Electronic Transactions Act

North Carolina has adopted the Uniform Electronic Transactions Act (the "UETA"). N.C. Gen. Stat. §§ 66-311 - 330. The UETA "applies to electronic transactions and electronic signatures relating to a transaction," *Id.* at § 66-313(a), and electronic signatures shall have the same legal effect as a signature drawn on paper and will be enforced in the same manner. *See id.* at §§ 66-317(a) - (d). *See also*, *Boyton v. Xerox Commer. Solutions, LLC*, *14, 2018 U.S. LEXIS 142772 (W.D.N.C. July 31, 2018) *citing* N.C. Gen. Stat. § 66-317(a) (a signature may not be denied legal effect or enforceability solely because it is in electronic format).

Regarding the attribution of an electronic signature to a person, the UETA states:

> (a) An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.

---

[4] Relying on the FAA, this Court has consistently enforced arbitration agreements in similar cases governing employment-based disputes by issuing a stay and compelling arbitration. *See* e.g., *Nereim v. Premara Fin., Inc.*, No. 3:14-cv-00096-FDW, 2014 U.S. Dist. LEXIS 86385, at *8-9 (W.D.N.C. June 24, 2014) (granting motion to compel arbitration and stay FLSA collective action); *Owens v. Dillard's Inc.*, No. 3:14-cv-00433-FDW, 2014 U.S. Dist. LEXIS 162512, at *5 (W.D.N.C. Nov. 19, 2014) (granting motion to compel arbitration and stay employment discrimination action); *Thomas v. Right Choice MWM, Inc.*, No. 3:13-cv-00512-FDW, 2014 U.S. Dist. LEXIS 56495, at *6 (W.D.N.C. Apr. 22, 2014) (granting motion to compel arbitration and stay ADA and ADEA action).

> (b) The effect of an electronic record or electronic signature attributed to a person under subsection (a) of this section is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law.

*Id*. at § 66-319. *See also*, *Roberts v. Cox Communs.*, 2021 U.S. Dist. LEXIS 122322 *5 (W.D.N.C. May 19, 2021) (Electronic signatures are "attributable to a person if it was the act of the person.").

The Official Comments to N.C. Gen. Stat. § 66-319 state:

> Certain information may be present in an electronic environment that does not appear to attribute but which clearly links a person to a particular record. Numerical codes, personal identification numbers, public and private key combinations, all serve to establish the party to whom an electronic record should be attributed. Of course security procedures will be another piece of evidence available to establish attribution.

N.C. Gen. Stat. § 66-319, Official Comments § 4. *See also, Roberts,* at *5 (the surrounding circumstances of the transaction will determine the attributability to the person).

### III. ARGUMENT

#### A. The Arbitration Agreement is a Valid Contract and Should be Enforced.

> The court must compel arbitration if four elements are met: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidence by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of the [opposing party] to arbitrate the dispute. *Galloway v. Santander Consumer USA, Inc.,* 514 U.S. 938, 944 (1995).

*Campbell v. Five Star Quality Care-N.C., LLC*, 21-cv-00095-FDW, at *2 (W.D.N.C. Nov. 18, 2021). In the present case, the first, third, and fourth elements are easily met: Joyner has filed a Complaint against Fiserv, and Fiserv has denied the allegations; Fiserv, Inc. and Fiserv Solutions, LLC are Wisconsin corporations with their principal places of business in Wisconsin; and Joyner has refused to submit his claims to arbitration. While there is an arbitration agreement, Joyner is contesting his agreement to arbitrate his claims.

7

The determination of whether there is a valid agreement to arbitrate is a matter of contract. *Johnson v. Circuit City Stores, Inc.,* 148 F.3d 373, 377 (4th Cir. 1998). The Court applies "ordinary state law principles that govern the formation of contracts." *Id.* (*quoting First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).[5] The *2021 Terms and Conditions* was presented to Joyner with the electronic signature of Anthony S. Marino, Fiserv's EVP and Head of Human Resources, already affixed. (Keeter Dec. ¶ 9(c)(iii)). As Joyner resided in North Carolina during his employment (D.E. # 1, ¶ 9), North Carolina law applies to the formation of the contract. *See, Rowland v. Minn. Life Ins. Co.*, CIVIL ACTION No. 5:19-CV-00069-KDB-DCK, at *7 (W.D.N.C. Feb. 3, 2020) ("Because the Plaintiffs lived in North Carolina at the time the Asset Management Agreement ("AMA") on which the Morris Defendants rely was purportedly executed, North Carolina law governs the formation of the asserted arbitration agreement.")

Under North Carolina law, a binding contract requires an offer, acceptance, and consideration. *Klopfer*, 816 F. Supp. 2d at 287.

### 1. Joyner Accepted Fiserv's Offer of Incentive Compensation

"It is essential to the formation of any contract that there be mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds." *Collie v. Wehr Dissolution Corp.*, 345 F. Supp. 2d 555, 558 (M.D.N.C. 2004) (internal citations and quotations omitted). Mutual assent is typically "established by an offer by one party and an acceptance by the other

---

[5] "However, the Supreme Court has emphasized that it should be kept in mind that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" *Id.* (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)). "Pursuant to that liberal policy, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* (quotation omitted). When an arbitration clause exists, motions to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Peoples Sec. Life Ins. Co. v, Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989) (internal citations omitted).

8

. . . ." *Id.* An employee can evidence their mutual assent to be bound by the conditions of an arbitration agreement by continuing employment. *Howard v. Oakwood Homes Corp.*, 134 N.C. App 116, 121, 516 S.E.2d 879, 882, *rev. denied* 350 N.C. 832, 539 S.E.2d 288 (1999), *cert. denied* 528 U.S. 1155 (2000). However, when an employee signs an arbitration agreement in which the conditions are unambiguous, "it is unnecessary to look beyond the writing to determine if mutual assent existed." *Martin v. Vance*, 133 N.C. App. 116, 121, 514 S.E.2d 306, 309 (1999).

Joyner states he "does not recall ever signing the [*2021 Terms and Conditions*]," and there is no "verification or authentication information to in any way determine who signed the document or when . . ." (Tisdale Dec., Ex. A). As an initial matter, a lack of recollection is insufficient to "challenge the authenticity of the signature." *Clark v. Am. Multi-Cinema*, 2019 U.S. Dist. LEXIS 231199 *8 (D.S.C. Nov. 19, 2019) (*citing Cox v. United States,* 2015 U.S. Dist. LEXIS 28913 *3 (M.D.N.C. Mar. 10, 2015).

As discussed above, the circumstances surrounding the affixation of an electronic signature determines the attributability of an electronic signature to the person. *Roberts*, *5. In the present case, as evidenced in the Keeter and Vitaletti declarations, Fiserv's business records reveal the following:

- Joyner's Fiserv business email account was alex.joyner@fiserv.com (Vitaletti Dec. ¶ 7);

- Fiserv employees, like Joyner, access their Fiserv email account by first logging into their Fiserv computer or Fiserv mobile device with their unique User ID and password, and then opening the Microsoft Outlook application. Employees are not able to log into a different employee's computer with their individual credentials. Further, Fiserv's policies prohibit employees from sharing their log-in credentials with others. (Vitaletti Dec. ¶ 8);

- On February 3, 2020, Fiserv sent an email to Joyner at alex.joyner@fiserv.com entitled "ACTION NEEDED: your 2020 Sales Compensation Plan – US (correct attachment) which contained Fiserv's *2020 Sales Compensation Plan*, instructions on how to execute the *2020 Terms and Conditions*, and the

- hyperlink through which Joyner could execute the *2020 Terms and Conditions.* (Vitaletti Dec. ¶ 9, Ex. A)*;*

- Joyner executed the *2020 Terms and Conditions* on February 3, 2020, by typing on the form his unique employee identification number, his first name, his last name, and then his full name in the signature line of the document, and then saving the document within the SignNow application. (Keeter Dec. ¶ 9);

- The SignNow software stored Joyner's executed *2020 Terms and Conditions* for access by Fiserv. (Keeter Dec. ¶ 9(d));

- On February 12, 2021, Fiserv sent an email to Joyner at alex.joyner@fiserv.com entitled "ACTION NEEDED: your 2021 Sales Compensation Plan – US (correct attachment)" which contained Fiserv's *2021 Sales Compensation Plan*, instructions on how to execute the *2021 Terms and Conditions*, and the hyperlink through which Joyner could execute the *2021 Terms and Conditions.* (Vitaletti Dec. ¶ 10-11)*.* The email was opened on the same day. Id. Also, the email informed Joyner the *2021 Terms and Conditions* contained an arbitration provision*.* (Keeter Dec. ¶ 9(a));

- The email was delivered to Plaintiff's email, alex.joyner@fiserv.com, on February 12, 2021, and opened by the recipient on the same day. (Vitaletti Dec. ¶ 11);

- Joyner executed the *2021 Terms and Conditions* on March 1, 2021, by typing on the form his unique employee identification number, his first name, his last name, and then his full name in the signature line of the document, and then saving the document within the SignNow application. (Keeter Dec. ¶ 9, Ex. B);

- The SignNow software stored Joyner's executed *2021 Terms and Conditions* for access by Fiserv. (Keeter Dec. ¶ 9(d)); and

- In 2021, Joyner received incentive compensation payments from Fiserv pursuant to the 2021 Sales Compensation Plan. (Keeter Dec. ¶ 13).

The attendant circumstances clearly evidence an offer of the *2021 Sales Compensation Plan* to Joyner. The plan and the link to the *2021 Terms and Conditions* which Joyner had to execute to accept the terms of the *2021 Sales Compensation Plan* were emailed to Joyner's Fiserv email account. Access to this account was restricted to Joyner through the use of his user identification and password.

The attendant circumstances also clearly evidence Joyner's acceptance of the *2021 Sales Compensation Plan* through his execution of the *2021 Terms and Conditions* by: accessing his password-protected computer or mobile device; opening his email containing the *2021 Sales Compensation Plan* and hyperlink to the *2021 Terms and Conditions*; typing in his employee identification number, first and last name, and then full name on the signature line; and completing the process by clicking "Finish."

### 2. There Was Ample Consideration Supporting the Offer and Acceptance of the Mutual Agreement to Arbitrate

There was more than ample consideration supporting the offer and acceptance of the mutual agreement to arbitrate. First, each party agreed to arbitrate disputes (Keeter Dec., Ex. B ¶ 1), and when each party promises to arbitrate disputes arising from the underlying contract, each promise provides consideration for the other, *Millar v. Reliastar Life Ins. Co.*, 157 F. Supp. 2d 645, 648 (W.D.N.C. 2000); in other words, mutual promises to arbitrate serve as adequate consideration to enforce the contract. *Id.* Second, Fiserv paid Joyner incentive compensation pursuant to the *2021 Sales Compensation Plan* which Joyner could only receive if he executed the *2021 Terms and Conditions* containing the mutual agreement to arbitrate. (Keeter Dec., Ex. B ¶ 1). Finally, Joyner remained an employee of Fiserv following his execution of the *2021 Terms and Conditions*. *See, Thompson v. Insurance Co. of N. Am.,* 1998 U.S. Dist. LEXIS 22583 *9 (W.D.N.C. Feb. 23, 1998) (Plaintiff's continued employment provided sufficient consideration to support the contract, as did the mutual obligation to arbitrate imposed by the policy.).

There is a binding agreement to arbitrate claims between Joyner and Fiserv; there was an offer, acceptance, and consideration. Contrary to his protestations, the circumstances clearly evidence Joyner's execution of the *2021 Terms and Conditions*, and his agreement to arbitrate disputes he may have with Fiserv regarding his employment.

### B. Plaintiff's Claims are Covered by the Arbitration Agreement.

Due to the federal policy favoring arbitration, ambiguities as to the scope of an arbitration clause must be resolved in favor of arbitration. *Adkins v. Labor Ready, Inc.,* 303 F.3d 496, 500 (4th Cir. 2002) (*citing Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ.,* 489 U.S. 468, 475-76 (1989)). That said, the claims alleged in Joyner's Complaint fall plainly within the purview of the parties' agreement to arbitrate found in Section 12.9 of the *2021 Terms and Conditions*.

The arbitration provision provides "disputes and claims include[], but [are] not limited to, claims or **causes of actions relating to** the Participant's application, hiring, employment, resignation, discharge, **termination**, and **wages**, including any disputes related to sales compensation or the making, performance, or interpretation of these Terms and Conditions or the Plan's provision, **whether sounding** in contract, statute, tort, fraud, misrepresentation, **discrimination**, common law or any other legal theory . . . ." (Keeter Dec., Ex. B ¶ 12.9) (emphasis added). Under these terms, Joyner's claims under Title VII, Section 1981, North Carolina Public Policy, and the North Carolina Wage and Hour Act are all covered claims under the arbitration provision. Therefore, the claims in Joyner's Complaint must be submitted to arbitration. *See Bankers Ins. Co.,* 245 F.3d at 319.

### C. The Court May Set Reasonable Deadlines for Status Reports and Resolution.

To the extent this Court deems it appropriate to stay this matter rather than dismiss it during the pendency of arbitration, the Court may require the parties to jointly prepare periodic status reports and set a deadline for resolution of the arbitration. *See e.g.*, *Nereim*, No. 3:14-cv-00096-FDW, 2014 U.S. Dist. LEXIS 86385, at *8-9 (requiring status reports every ninety days and resolution within twelve months). Defendants have no objection to such requirements.

Defendants, however, respectfully request that the Court provide the parties twelve months to resolve the arbitration, tailoring that deadline to the potential complexity of the case and the anticipated time needed to resolve the claims alleged.

**IV.   CONCLUSION**

Based on the foregoing, Defendants respectfully request this Court enter an order dismissing the Complaint and requiring the litigants to resolve their disputes in accordance with the terms of the arbitration provision found in the *2021 Terms and Conditions*.  If this Court is not inclined to dismiss this action, Defendants respectfully request this Court stay these proceedings, pending compliance with the terms of the arbitration agreement.

Respectfully submitted this the 22nd day of December 2022.

**JACKSON LEWIS P.C.**

BY:   /s/ H. Bernard Tisdale III
H. Bernard Tisdale III
N.C. State Bar No. 23980
J. Melissa Woods
N.C. State Bar No. 21313
200 S. College Street, Suite 1550
Charlotte, North Carolina 28202
Telephone: (980) 465-7245
Fax: (704) 333-7764
Bernard.Tisdale@jacksonlewis.com
Melissa.Woods@jacksonlewis.com
***Attorneys for Defendant*s**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CA No. 3:22-cv-456

| ALEXANDER JOYNER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **CERTIFICATE OF SERVICE** |
| FISERV, INC and FISERV SOLUTIONS, LLC, | ) | |
| Defendants. | ) | |

The undersigned certifies that on December 22, 2022, a copy of the attached *Defendants' Memorandum in Support of their Motion to Dismiss or in the Alternative, Motion to Stay and Compel Arbitration* was electronically filed with the Clerk of Court, using the Court's CM/ECF electronic service system, and a copy served on all parties by that service to:

Michelle Gessner
GessnerLaw, PLLC
600 East Morehead Street
G.G. Galloway House
Charlotte, NC 28202
michelle@mgessnerlaw.com

Respectfully submitted this the 22nd day of December 2022.

**JACKSON LEWIS P.C.**

BY: /s/ *H. Bernard Tisdale III*
N.C. State Bar No. 23980
J. Melissa Woods
N.C. State Bar No. 21313
525 N. Tryon Street, Suite 1600
Charlotte, NC 28204
Telephone: (704) 331-3984
Telephone: (704) 331-3987
Email: Bernard.Tisdale@jacksonlewis.com
Email: Melissa.Woods@jacksonlewis.com
*Attorneys for Defendants*