IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CA No. 3:22-cv-456

| | |
|---|---|
| ALEXANDER JOYNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  **DECLARATION OF** |
| | )  **H. BERNARD TISDALE III** |
| FISERV, INC. and FISERV | ) |
| SOLUTIONS, LLC, | ) |
| | ) |
| Defendants. | ) |

1. My name is H. Bernard Tisdale III, and I am a resident of Matthews, North Carolina.

2. I am over 18 years of age and competent to testify to the matters contained in this Declaration. This Declaration is based upon my own personal knowledge.

3. At all times relevant hereto, I have been licensed to practice law in the State of North Carolina, and I have entered an appearance as counsel for the Defendants in this matter.

4. Attached as Exhibit A is a true and accurate copy of an email exchange I had with Plaintiff's counsel regarding Defendants' request that Plaintiff consent to submit his claims against Defendants to arbitration.

5. While it was attached to the original email, I have not attached a copy of the Plaintiff's Complaint to the Exhibit.

6. I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct and based upon my own personal knowledge.

This 22nd day of December, 2022.

*/s/ H. Bernard Tisdale III*
H. Bernard Tisdale III

## Tisdale, H. Bernard, III (Charlotte)

| | |
|---|---|
| **From:** | Michelle Gessner <michelle@mgessnerlaw.com> |
| **Sent:** | Wednesday, November 16, 2022 1:37 PM |
| **To:** | Tisdale, H. Bernard, III (Charlotte) |
| **Cc:** | Ann Lucas |
| **Subject:** | Re: Alexander Joyner v. Fiserv - Arbitration Demand |
| **Attachments:** | Joyner 2021 TC.pdf; 20221107150303233.pdf |

| | |
|---|---|
| **Categories:** | Filed to ND |
| **FilingIndicator:** | -1 |

**[EXTERNAL SENDER]**

Bernard - Thanks for your email. Mr. Joyner does not recall ever signing the document you attached. It appears to be an electronic signature, but there is not verification or authentication information to in any way determine who signed the document or when. We will oppose any effort to compel arbitration, accordingly.

Nonetheless, Mr. Joyner is interested in potentially settling this matter early if possible to avoid unnecessary legal spend. Please let me know.

Best,
L. Michelle Gessner



**Mailing Address:** Post Office Box 78161 • Charlotte, NC 28271

**Charlotte Office:** 602 East Morehead Street • G.G. Galloway House • Charlotte, NC 28202
Tel: 1.844.GESSNER • Fax: 980.206.0286

**Wilmington Office:** 1213 Culbreth Drive, Suite 426 • Wilmington, NC 28405
Tel: 1.844.GESSNER • Fax: 980.206.0286

www.mgessnerlaw.com

This message may contain information protected by the attorney-client privilege or work product doctrine. If you are not the intended recipient, then please delete it and report the inadvertent delivery to the author.

---------- Forwarded message ---------
From: **Tisdale, H. Bernard, III (Charlotte)** <Bernard.Tisdale@jacksonlewis.com>
Date: Tue, Nov 8, 2022 at 2:39 PM
Subject: Alexander Joyner v. Fiserv - Arbitration Demand
To: michelle@mgessnerlaw.com <michelle@mgessnerlaw.com>

1

Case 3:22-cv-00456-FDW-DSC   Document 8-2   Filed 12/22/22   Page 2 of 15

Joyner v. Fiserv, Inc., et al.
Tisdale Declaration - Ex. A
Page 000001

Good afternoon Michelle! I hope you are doing well.

Please be advised that Fiserv has retained Jackson Lewis to defend the company in connection with the claims being made by Mr. Joyner in the attached Complaint. Please ensure all future correspondence and notices are directed to our attention.

Second, in connection with his employment, Mr. Joyner executed the attached Compensation Plan containing a requirement that he follow certain procedures associated with any claims he had or may have against the company, including provisions requiring the arbitration of the claims being made in the attached complaint.

Please let us know as soon as possible if Mr. Joyner will comply with the terms of the attached document, agree to stay the federal court litigation, and pursue his claims in arbitration.

Please give me a call should you wish to discuss this matter.

Regards,

Bernard



### H. Bernard Tisdale III
Attorney at Law

**Jackson Lewis P.C.**
200 South College Street
Suite 1550
Charlotte, NC 28202
Direct: (980) 465-7238 | Main: (980) 465-7237 | Mobile: (864) 346-3737
Bernard.Tisdale@jacksonlewis.com | www.jacksonlewis.com

2

Case 3:22-cv-00456-FDW-DSC   Document 8-2   Filed 12/22/22   Page 3 of 15

Joyner v. Fiserv, Inc., et al.
Tisdale Declaration - Ex. A
Page 000002

| | |
|---|---|
| **Employee ID** | 315649 |
| **First Name** | Alexander |
| **Last Name** | Joyner |

**2021 Fiserv Sales Compensation Plan Terms, Conditions and Acknowledgement**

1.      **Eligibility and Earning Compensation Under the Plan.** Participation in this Plan is subject to these Terms and Conditions and the Plan provisions. A Participant cannot earn and be paid compensation under the Plan until all requirements of these Terms and Conditions and the Plan's provisions have been fulfilled and no provisions of these Terms and Conditions or the Plan's provisions disqualify Participant from earning or receiving compensation. Participant is not eligible to earn or receive any payment under the Plan until after Participant has electronically signed the Acknowledgment included either in these Terms and Conditions or in the Sales Compensation Portal. Compensation cannot be earned or paid under the Plan unless Participant is providing client support as needed as determined by the Company. Except for prior plan milestones or true-up occurrence(s), Participant s may only participate in one sales compensation plan at a time, and a Participant on a sales compensation plan may not participate simultaneously in the Fiserv Annual Cash Incentive Plan ("ACIP") or similar cash incentive plan.  No employee has the right to or is guaranteed the right to participate in the Plan by virtue of being an employee or by filling any specific position within the Company or its affiliates. Selection for and continued participation in the Plan is within the sole discretion of Senior Management. Except as otherwise provided in a Plan, a Participant must be employed with the Company at the time of a payment milestone, a true-up payment, or Measurement Period to have earned a commission and to be eligible to receive the commission payment related to that payment milestone or Measurement Period.

2.      **Effective Date.** The Plan's Effective Date is noted in the Plan and will continue to be effective unless otherwise terminated by Senior Management. Except as otherwise noted in Section 2.2 below, this Plan cancels, supersedes, and replaces all previous sales compensation plans or arrangements (either verbal or written) in which Participant previously participated. Except as expressly provided in the Plan and below, no compensation will be earned or payable under the Plan before the Plan's Effective Date.

   2.1.   **New Participants after Effective Date**: For individuals who become Participants in the Plan during the Plan Year but after the Plan's Effective Date ("New Participant"), Senior Management may, in its sole discretion, prorate certain components of the Plan for New Participants including quotas and target incentives.

   2.2.   **Accounts Prior to Effective Date**: If applicable, and in the sole discretion of the Company, Participant may be eligible to be paid incentive compensation on accounts secured before the Effective Date under Participant's prior sales compensation plan ("Prior Plan"). In such case, Prior Plan account incentive will be calculated by applying the plan provisions in effect on the date the contract was signed under the Prior Plan. Prior Plan account incentive will be paid the earlier of: (1) within ninety (90) days following the end of the Measurement Period, milestone or true-up payment; or (2) on or before March 15 following the end of the Prior Plan year. Participant's eligibility to earn incentive compensation under the Prior Plan  and the basis for calculating Prior Plan account incentive will only apply until the earlier of: (1) the final incentive payment in the Prior Plan's applicable schedule occurs; (2) the termination or modification of the Prior Plan; or (3) the date on which the Participant ceases participation in the Plan.

3.      **Termination from Participation in Plan.** If Participant's employment is terminated (either voluntarily or involuntarily) for any reason or if Participant's participation in the Plan is otherwise terminated, he or she will: (1) no longer be a Participant in the Plan; (2) only be eligible to receive compensation that was earned (according to the Plan and the Terms and Conditions) up to and including his or her effective date of

2021 Sales Compensation Plan Terms and Conditions
Page 1 of 9

Case 3:22-cv-00456-FDW-DSC   Document 8-2   Filed 12/22/22   Page 4 of 15

Joyner v. Fiserv, Inc., et al.
Tisdale Declaration - Ex. A
Page 000003

termination; and (3) not be eligible to earn any compensation after his or her effective date of termination from employment and/or participation in the Plan. Except as expressly provided in the Plan, required by applicable law, or expressly provided in a document signed by Senior Management or their designee (a) the Participant must be actively employed as a Participant under the Plan on the last day of the applicable Measurement Period to be eligible to earn compensation calculated for that Measurement Period, and (b) no Participant is eligible to receive prorated payment for any compensation that is calculated and paid out annually, quarterly, or for a period of greater than one month. For purposes of earning a payment under the Plan, Participant's "effective date of termination" from employment and/or participation in the Plan will be determined in the Company's sole discretion. The provisions in Sections 12.9-12.10 included in these Terms and Conditions and the post-employment requirements in the attached Exhibit 1 will survive any such termination.

4. **Disqualification from Compensation.** A Participant's compliance with the Company's Code of Conduct and, if applicable, the Sales Code of Conduct, and all other Company policies, rules and procedures are conditions precedent to earning and receiving compensation under the Plan. Participants who, in the sole discretion of the Company: (1) engage in misrepresentation, fraud, dishonesty, or other unethical behavior; (2) violate any company policy, including the Company's Code of Conduct and/or the Sales Code of Conduct; or (3) fail to comply with any applicable booking, pricing, sales or other similar policies and/or rules will not be entitled to receive compensation or credit that would otherwise be earned under the Plan. In addition, Participants may be subject to disciplinary action, up to and including immediate termination of employment.

5. **Clawback and Repayment of Compensation.** To the extent allowed by law, all payments under the Plan are subject to reduction, cancellation, forfeiture or recoupment to the extent necessary to comply with (1) any clawback, forfeiture or other similar policy adopted by the Company and as in effect from time to time, and (2) applicable law, whether such policy or law becomes effective before or after the Effective Date or the date a Participant receives a payment under the Plan. In the event a Participant receives more compensation than Participant should otherwise have received under the terms of the Plan for any reason (including, without limitation, by reason of a change in deal value, a delay in implementation or go-live date, full or partial cancellation, which reduces the originally-credited deal value that was used in the original commission calculation, a mistake in calculations or other administrative error(s)), to the extent permitted by law, the Participant may be required to repay the excess amount to the Company. By accepting a payment under the Plan, a Participant acknowledges and consents to the Company's application, implementation and enforcement of any clawback, forfeiture, or other similar policy adopted by the Company, whether adopted before or after the date Participant receives payment under the Plan, and Participant further consents that the Company may take such actions as may be necessary to effectuate any such policy or applicable law, without further consideration or action. Participant further consents to and agrees that the Company may implement any clawback or recoupment by deducting the amount of the clawback or recoupment from future compensation payments due to the Participant, to the extent allowed by law, and Participant acknowledges and agrees that the Company may withhold, deduct or divert any portion of Participant's future compensation as the amount to be clawed back or recouped represents a compensation/payroll overpayment.

6. **Detrimental Conduct.** To the extent allowed by law, if Senior Management determines a Participant has engaged in any Detrimental Conduct, Senior Management may, in its sole discretion, cancel any or all of a Participant's compensation under the Plan for the Plan Year. Not engaging in Detrimental Conduct is a requirement for a Participant to earn and receive compensation under the Plan.

Detrimental Conduct includes: (1) the unauthorized use, disclosure or dissemination of Company's confidential information or trade secrets; (2) any activity that would be grounds to terminate the Participant's employment with the Company for Cause; or (3) a breach by the Participant of any restrictive covenant by which such Participant is bound, including, without limitation, any non-disclosure agreement or covenant not to solicit or compete. This definition does not preclude a Participant from communicating, cooperating or filing a complaint with any U.S. federal, state or local governmental or law enforcement branch, agency or entity (collectively, a

2021 Sales Compensation Plan Terms and Conditions
Page 2 of 9

Case 3:22-cv-00456-FDW-DSC   Document 8-2   Filed 12/22/22   Page 5 of 15

Joynes v. Sisense Inc., et al.
Tisdale Declaration - Ex. A
Page 000004

"Governmental Entity") with respect to possible violations of any U.S. federal, state or local law or regulation, or otherwise making disclosures to any Governmental Entity, in each case, that are protected under the whistleblower provisions of any such law or regulation, provided that, in each case, such communications and disclosures are consistent with applicable law and provided further that under no circumstance is the Participant authorized to disclose any information covered by the Company's attorney-client privilege or attorney work product or Trade Secrets without prior written consent of the Company's Board of Directors or its designee.

Additionally, "Cause" will be determined by Senior Management, in its sole discretion, and will include any actions contrary to or in violation of the Company's policies, procedures, values, the Sales Code of Conduct (where applicable) or the Company's Code of Conduct, including, but not limited to, those items that could constitute "Cause" or "Misconduct" (as defined in the Company's Severance Plan). All rights a Participant has or may have under the Plan will be suspended automatically during the pendency of any investigation by the Company or its designee, or during any negotiation between the Company and Participant regarding any actual or alleged act or omission by the Participant of the type of described in the applicable definition of Cause. The existence of this provision does not otherwise alter or modify the at-will employment relationship between Participant and the Company.

7. **Leave of Absence.** Except as expressly provided otherwise in the Plan or under Company policy, all compensation or any payment for business-related expenses cannot be earned during an approved, continuous leave of absence, except as may otherwise be required by applicable law. However, any unpaid compensation earned before the approved leave of absence begins will be paid in accordance with applicable payroll and benefit practices. In addition, performance goals, including quotas and incentive targets, may be adjusted during an approved leave of absence.

8. **Death.** Upon a Participant's death any unpaid compensation earned before the death will be paid following the death consistent with normal payroll practices.

9. **Special Sales Situations.** In certain circumstances, events may warrant adjustments to application of the Plan such as the following:

    9.1. **Windfall Transactions**: Windfall Transactions are generally defined as events that are outside the scope of the Participant's actions and also transactions that would be compensable under the Plan but which resulted from little or no activity by the Participant or that close due to unforeseen or un-forecasted events. Some examples include, but are not limited to, house accounts, substantial transaction(s) that require Senior Management's assistance in order to close the transaction, customer relocation into Participant's territory, merger and/or acquisition of a customer, and/or Participant's assignment into a territory after a sale transaction is substantially complete. In its sole discretion, the Company may determine that the business transaction is a Windfall Transaction and: (i) make adjustments to payout amounts, payout criteria, and calculation methods; (ii) determine whether a quota credit or payments will be awarded (and amount of, if any) to Participant for such Windfall Transaction; and (iii) allocate additional quota to a Participant that is compensated for a Windfall Transaction.

    9.2. **Split or Multiple Sales Credit**: If applicable to Participant, the Company may, for any given sale, award multiple sales credits or require Participant or Participant's assigned team member to *split* sales credit with other employees whose efforts, in the Company's sole discretion, substantially contributed to securing such sale. In any case, the amount of compensation, if any, due to split or multiple sales crediting will be determined on a case-by-case basis at the Company's sole discretion.

10. **Recovery of Advances and Other Deductions.** Participant agrees to and authorizes the Company to recover any advances and other payments due to the Company.

2021 Sales Compensation Plan Terms and Conditions
Page 3 of 9

Case 3:22-cv-00456-FDW-DSC   Document 8-2   Filed 12/22/22   Page 6 of 15

Joyce v. Isilon, Inc., et al.
Tisdale Declaration - Ex. A
Page 000005

10.1. **Advances**: Participant agrees that the Company may recover any advanced incentive payment if the earnings events are not met for an advanced incentive payment as specified in the "When Earned" or similar type section of each component of the Plan. In such cases, the amount of advanced incentive to be recovered will be deducted from any future incentives and the balance carried over to future consecutive incentive pay periods until the balance of the advanced incentive amount is zero. If a Participant terminates from participation in the Plan before the earnings events and does not have compensation due that is sufficient to cover the advances, Participant agrees to repay the Company the amount of advanced unearned compensation.

10.2. **Other Deductions**: To the extent permitted by applicable law, Participant agrees and authorizes the Company to deduct, from any compensation (including final paycheck) Participant would otherwise be eligible to receive, any outstanding debt Participant owes the Company, such as the value of unreturned property, overpayments of compensation, and use of unaccrued time off.

**11. Plan Definitions.** The definitions for all defined terms used in this document can either be found in these Terms and Conditions or in Participant's Plan. In addition, the following definitions apply to the Plan:

11.1. **Fiserv or Company**: Means Fiserv, Inc., including all of its subsidiaries and affiliates.

11.2. **Contract**: A Signed, Company-approved client agreement or amendment for the Company's products/services.

11.3. **Measurement Period**: The time period in which a Participant's performance is evaluated for eligibility of an incentive payment. Measurement Periods may vary by Plan component; are generally monthly, quarterly, and/or annually; and are noted in a Participant's Plan in the Component Overview or similar type section.

11.4. **Participant**: An employee of the Company that the Company has selected to participate in the Plan and has electronically acknowledged and agreed to the Plan and its Terms and Conditions, including Exhibit 1 Post-Employment Obligations.

11.5. **Plan**: Where used in these Terms and Conditions, the term "Plan" refers to all U.S. (excluding CA residents) sales compensation plan document(s), including any incorporated Exhibits, appendices, and agreements (such as Exhibit 1, Post-Employment Obligations), applicable to Participant at any time during the Plan Year and as may be separately provided or made available to Participant.

11.6. **Plan Year**: A time period of twelve (12) consecutive months beginning on January 1 and ending December 31.

11.7. **Senior Management**: The manager 1-3 levels above Participant's current manager in addition to representation from Human Resources, Sales Compensation and/or Finance teams.

11.8. **Signed (Sign, Signing)**: The full execution of a binding document committing the client to utilize the Company's products/services. For purposes of indirect sales made through a third party, "Signing" is defined by the terms of the arrangement with the third party.

**12. Other Important Provisions.** Any terms and conditions or other items not addressed above or elsewhere in the Plan(s) will be determined in the Company's sole discretion. In addition, the following apply:

12.1. **Plan Changes**: The Company may modify, suspend, amend, or terminate the Plan, these terms and conditions, including its attachments or other documents referenced in the Plan, in whole or in part,

2021 Sales Compensation Plan Terms and Conditions
Page 4 of 9

Case 3:22-cv-00456-FDW-DSC   Document 8-2   Filed 12/22/22   Page 7 of 15
Joyce v. Fiserv, Inc., et al.
Tisdale Declaration - Ex. A
Page 000006

at any time without consent by Participants. The Company reserves the right to change the Plan in a manner that may modify or eliminate the amount of payment of compensation of any type that may otherwise be earned under the Plan. No employee or agent of the Company, other than Senior Management, may modify, suspend, amend, or terminate the Plan, including any attachments, in any form. To be effective, any modification, suspension, or amendment of the Plan, including its attachments, must be authorized in writing by Senior Management or his or her designee.

12.2. **Payment Timing and Method**: In order to permit a full accounting of earnings, incentive payments will be paid within ninety (90) days following the end of a given incentive payment frequency (e.g. month, quarter and/or the Plan Year) as specified in the Plan, unless sooner as may be required by law. All incentive payments earned as set forth in the Plan will be paid on or before March 15 following the Plan Year.

12.3. **Interpretation and Administration**: Senior Management will have the sole and absolute discretion to interpret and administer the Plan. In addition, Senior Management will have the final, sole, and binding decision-making authority with respect to the Plan. Plan commitments or interpretations by anyone other than Senior Management are invalid and will have no effect on the policies, terms and conditions, and procedures set forth in the Plan. No commitment or interpretation of any provision of these Terms and Conditions or the Plan's provision by Senior Management will be valid or binding unless memorialized in a written document signed by an authorized member of Senior Management.

12.4. **Governing Law; Forum**: These Terms and Conditions (including Exhibit 1) and the Plan will be construed and interpreted under the laws of the State of Wisconsin without regard to the principles of conflicts of law. If any controversy between Fiserv and Participant arises out of, or relates to, these Terms and Conditions (including Exhibit 1) and the Plan, Fiserv and Participant agree and consent to the exclusive jurisdiction and venue of the state and federal courts of Wisconsin.

12.5. **Severability:** Should any provision of the Terms and Conditions (including Exhibit 1) and/or the Plan be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, such provision immediately will become null and void, leaving the remainder of these Terms and Conditions (including Exhibit 1) and/or the Plan in full force and effect.

12.6. **Funding**: The Plan is unfunded and the payment of compensation under the Plan will be subordinate to claims of the Company's general creditors.

12.7. **Senior Management Discretion**: At any time, and within the Company's sole discretion, the Company may modify or amend for any reason on a case-by-case basis the following, but not limited to; 1) sales crediting; 2) incentive payment mechanisms (e.g. commission rates, bonus scales, capping, etc.); 3) Participant's incentive payment; 4) prorated quotas and/or incentive targets for Participants commencing participation in the Plan after commencement of Plan Year; and/or 5) Plan definitions.

12.8. **Challenge, Dispute, and Claim Resolution Process**: If a Participant disagrees with a compensation decision made under these Terms and Conditions or the Plan's provisions, any challenge, dispute and claim regarding any compensation decision (e.g., non-payment or amount of payment) must be initiated within the time periods set out below, pursuant to the process set out below.

> 12.8.1. **Time Period/Limitation Period for Submission of a Challenge, Dispute or Claim**: A challenge, dispute or claim regarding any compensation decision made under these Terms and Conditions or the Plan must be initiated within 180 days of the payment or non-payment decision at issue (Step 1 below). If the challenge, dispute or claim is not initiated within 180 days of the date of the payment or non-payment decision, the payment or non-payment decision becomes

2021 Sales Compensation Plan Terms and Conditions
Page 5 of 9

Case 3:22-cv-00456-FDW-DSC   Document 8-2   Filed 12/22/22   Page 8 of 15

Joyce v. Fiserv, Inc., et al.
Tisdale Declaration - Ex. A
Page 000007

final, binding and not subject to challenge, and Participant waives the right to raise or challenge, dispute or assert a claim regarding the compensation decision at issue.

12.8.2. **Challenge/Dispute/Claim Process**:

- **Step 1** – A challenge, dispute or claim should first be initiated with the compensation team member assigned to the Participant's business unit. The challenge, dispute or claim should be made in writing, and should describe the issue in sufficient detail to facilitate review. The challenge, dispute or claim may be transmitted by email, or by a Participant logging an issue through a process applicable to the Participant's business unit (for example, ServiceNow, 1STAR, Optymyze, etc.). Upon receipt of the challenge, dispute or claim, a member of the compensation team will review the issue and work with the Participant to address and resolve the issue. In most cases, the compensation team member will be able to address and resolve the issue, which may include seeking input from an applicable human resources business partner and/or finance team member.

- **Step 2** – If a challenge, dispute or claim is not resolved to the satisfaction of the Participant at Step 1, the Participant may seek review of the decision made at Step 1 by transmitting a written request for review/reconsideration to a member of Senior Management within 30 days of receipt of the Step 1 decision. The request for review should describe the nature of the initial challenge, dispute or claim, the decision reached at Step 1, and the resolution sought by the Participant. The Senior Management member will review the challenge, dispute or claim and issue a written decision to the Participant. Failure to transmit a request for review within 30 days of receipt of the Step 1 decision will bar the Participant from seeking review of the challenge, dispute or claim, and the Step 1 decision will become final binding and not subject to further review, litigation, or arbitration.

- **Step 3** – If a Participant is not satisfied with the decision reached in Step 2, the Participant may request arbitration pursuant to section 12.9 below. A Participant must serve a demand for arbitration upon Fiserv within 60 days of receipt of the written Step 2 decision. Failure to serve a demand for arbitration upon Fiserv within 60 days of receipt of the Step 2 written decision will bar the Participant from seeking review of the challenge, dispute or claim through arbitration, and the decision issued at Step 2 will become final, binding and not subject to further review, litigation or arbitration.

A demand for arbitration should be made in writing. The written demand for arbitration is made by including the following information in a letter:

- Name, business unit and contact information of the Participant demanding arbitration;
- The nature of the challenge, dispute claim, and a summary of the basis for the claim;
- The remedy sought, or the desired resolution of the dispute;
- A statement regarding the initiation of, and decisions reached at, Steps 1 and 2 (with copies of the written decisions attached); and
- The signature of the party demanding arbitration.

The nature of the claim must be specified so that all parties, including the arbitrator, have a clear understanding of the dispute.

The demand for arbitration must be sent to: Fiserv, Inc. 255 Fiserv Drive, Brookfield, Wisconsin 53045, ATTN: Office of the General Counsel. A demand for arbitration sent to any other person or to another location of the Company will not be effective.

2021 Sales Compensation Plan Terms and Conditions
Page 6 of 9

Case 3:22-cv-00456-FDW-DSC   Document 8-2   Filed 12/22/22   Page 9 of 15

Joyner v. Fiserv, Inc., et al.
Tisdale Declaration - Ex. A
Page 000008

The Company will forward the demand for arbitration to the appropriate case management center for the American Arbitration Association (the "AAA"), along with a check made payable to the AAA in the amount of the filing fee.

**12.9.    Arbitration:  As a condition of Participant' participation in the Plan, Participant and Fiserv agree that any claim, controversy or dispute between Participant and Fiserv relating in any way to Participant's employment, compensation (including Participant's compensation under the Plan and/or these Terms and Conditions), other terms and conditions of employment, termination of employment, or the interpretation of these Terms and Conditions or the Plan, whether sounding in contract, statute, tort, fraud, misrepresentation, discrimination, retaliation or any other legal theory, under any federal, state, or local law or regulation, whenever brought or amended, shall be resolved by binding arbitration in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association (the "AAA"), as modified by applicable law and the terms of these Terms and Conditions and the Plan's provisions.  The AAA's employment rules are available at www.adr.org.  This requirement to arbitrate disputes and claims includes, but is not limited to, claims or causes of actions relating to the Participant's application, hiring, employment, resignation, discharge, termination, and wages, including any disputes related to sales compensation or the making, performance, or interpretation of these Terms and Conditions or the Plan's provisions, whether sounding in contract, statute, tort, fraud, misrepresentation, discrimination, common law or any other legal theory, claims under Title VII of the Civil Rights Act of 1964, as amended; claims under the Civil Rights Act of 1991; claims under the Age Discrimination in Employment Act of 1967, as amended; claims under 42 U.S.C. Sections 1981, 1981a, 1983, 1985, or 1988; claims under the Family and Medical Leave Act of 1993; claims under the Americans with Disabilities Act of 1990, as amended; claims under the Rehabilitation Act of 1973, as amended; claims under the Fair Labor Standards Act of 1938, as amended; and claims under any other  federal, state, or local law or regulation governing employment.  However, if Participant would be legally required to exhaust administrative remedies before obtaining legal relief, Participant can and must exhaust such administrative remedies prior to pursuing arbitration. The only legal claims between Participant and Fiserv that are not included within this obligation to arbitrate are claims by Participant for workers' compensation or unemployment compensation benefits, and restrictive covenant disputes between Participant and Fiserv.**

**Either the Participant or Fiserv may demand arbitration by providing written notice to the other party.  A neutral arbitrator, agreed upon by the parties, shall conduct the arbitration.  If the parties are unable to agree upon an arbitrator, then they may petition the AAA to administer this case and use the AAA's arbitration procedures to select an arbitrator.  The arbitration will take place in Brookfield, Wisconsin, or in a location as otherwise agreed upon by the parties, and the dispute will be governed by and interpreted under the laws of Wisconsin. The parties will be entitled to discovery sufficient to adequately arbitrate their claims and defenses, including access to essential documents and witnesses, even if the AAA rules and procedures are more restrictive. The arbitrator will have the authority to resolve all portions of the dispute through a summary judgment motion and/or related proceedings.  The arbitrator will have the authority to order all remedies that would be available to the parties if the dispute between them were litigated in state court, or if applicable, in federal court.  The arbitrator must render a written arbitration award containing the essential findings and conclusions on which the award is based.  A party's right to appeal the award is limited to grounds provided under a state's applicable law for challenging an arbitration award or, if the dispute raises issues supporting federal jurisdiction, under the Federal Arbitration Act.  Under no circumstances will the Participant be required to pay administrative fees in excess of those fees, if any, that would have been incurred by the Participant had the**

2021 Sales Compensation Plan Terms and Conditions
Page 7 of 9

Case 3:22-cv-00456-FDW-DSC   Document 8-2   Filed 12/22/22   Page 10 of 15
Ponder v. Fiserv, Inc., et al.
Tisdale Declaration - Ex. A
Page 000009

dispute arbitrated under this provision been litigated in state court, or if the dispute raises issues supporting federal jurisdiction, in federal court. Fiserv will be responsible for all administrative fees exceeding such amount. Fiserv shall also pay the arbitrator's fees. Participant and Fiserv shall bear their own costs, as limited herein, including but not limited to filing fees, deposition costs, costs of service of process, witness fees and transcript costs. The prevailing party in the arbitration is entitled to recover such costs that the prevailing party would be entitled to recover in state court, or if the dispute raises issues supporting federal jurisdiction, in federal court. The parties shall bear their own attorneys' fees. Attorneys' fees may be recovered by either party only when authorized by contract, statute or applicable state or federal law. By participating in the Plan, Participant and Fiserv voluntarily, knowingly and intelligently waive any right to seek remedies in court, including the right to a jury trial.

**12.10. Waiver of Class, Collective and and/or Representative Claims**: Participant and Fiserv waive the right to initiate, bring, pursue, maintain or participate in a class, collective and/or representative claims against each other. No claim, controversy or dispute between Participant and Fiserv relating in any way to Participant's employment, compensation (including Participant's compensation under the Plan and/or these Terms and Conditions), other terms and conditions of employment, termination of employment, or the interpretation of these Terms and Conditions or the Plan, whether sounding in contract, statute, tort, fraud, misrepresentation, discrimination, retaliation or any other legal theory, under any federal, state, or local law or regulation, whenever brought or amended, may be initiated or maintained on a class, collective or representative action basis. Any dispute or claim purporting to be brought as a class action, collective action or representative action will be decided as an individual claim. The exclusive procedure for the resolution of all claims or disputes between Participant and Fiserv is through binding arbitration, on an individual basis. A Participant may not participate as a class or collective action representative or a class, collective or representative action member or be entitled to a recovery from a class, collective or representative action. Any issue concerning the validity of this class action, collective action and representative action waiver must be decided by a court, and an arbitrator does not have authority to consider the issue of the validity of this waiver. If for any reason this class, collective and representative action waiver is found to be unenforceable, the class, collective or representative claim may only be heard in court and may not be arbitrated under this Agreement. AN ARBITRATOR APPOINTED UNDER THESE TERMS AND CONDITIONS OR THE PLAN SHALL NOT CONDUCT A CLASS, OR COLLECTIVE OR REPRESENTATIVE ACTION ARBITRATION AND SHALL NOT ALLOW PARTICIPANT TO SERVE AS A REPRESENTATIVE OF OTHERS IN AN ARBITRATION CONDUCTED UNDER THESE TERMS AND CONDITIONS. PARTICIPANT AND FISERV AGREE THAT THEY VOLUNTARILY, KNOWINGLY, AND INTELLIGENTLY WAIVE ANY RIGHT THEY MAY HAVE TO BRING OR OTHERWISE PARTICIPATE WITH OTHER PERSONS IN ANY CLASS, COLLECTIVE, CONSOLIDATED ACTION OR REPRESENTATIVE ACTION UNDER ANY STATE OR LOCAL LAW OR STATUTE. IF A COURT DETERMINES THIS WAIVER OF RIGHT TO BRING CLASS, COLLECTIVE, CONSOLIDATED OR REPRESENTATIVE ACTIONS IS UNENFORCEABLE IN A PARTICULAR CASE, ANY SURVIVING CLASS, COLLECTIVE, CONSOLIDATED OR REPRESENTATIVE ACTIONS IN THAT CASE MAY PROCEED ONLY IN THE APPROPRIATE COURT AND WILL NOT BE SUBJECT TO THE AGREEMENT TO ARBITRATION ABOVE IN SECTION 12.9.

12.11. **Other Incentive Plans**: Except as expressly provided by the Plan or in an authorized written supplement to the Plan, Participants are not eligible to participate in any other Company incentive compensation plans. Participant may be eligible to receive equity grants under the Company's equity plan. The Company will determine, in its sole discretion, whether to grant and the amount of such equity to a Participant.

2021 Sales Compensation Plan Terms and Conditions
Page 8 of 9

Case 3:22-cv-00456-FDW-DSC   Document 8-2   Filed 12/22/22   Page 11 of 15

Poyner v. Fiserv, Inc., et al.
Tisdale Declaration - Ex. A
Page 000010

12.12.  **Prior Employer**: Employees must observe any non-solicitation, confidentiality, or other similar agreement employees may be bound by as a result of their prior employment with other companies.

12.13.  **At-Will Employment**: Nothing in these Terms and Conditions (including Exhibit 1) and the Plan, either alone or with any other documents, may be construed to create expressly or by implication an employment relationship for a specified duration. Participant or the Company may terminate Participant's employment with or without cause or notice, at any time. Additionally, the Company may change the terms and conditions of Participant's employment at any time at its sole discretion.

*Anthony S. Marino*
Anthony Marino
EVP & Head of Human Resources

*Alexander Joyner*
Participant

## ACKNOWLEDGEMENT

I have received, read, understand, and agree to all the information contained in these Terms & Conditions, the Plan, and any attachments referenced in this document, including Exhibit 1 Post-Employment Obligations.  I acknowledge that I am not eligible to earn or receive any incentive under the Plan until after I have electronically signed and agreed to these Terms & Conditions (including Exhibit 1) and the Plan. I acknowledge that my electronic signature is the legal equivalent of my manual signature. I further acknowledge that I have the sole responsibility to obtain copies of any documents referenced in the Plan, but of which I do not currently have a copy. I also have the sole responsibility to consult with my manager or Human Resources Representative if I have questions or concerns relating to the Plan.

2021 Sales Compensation Plan Terms and Conditions
Page 9 of 9

Case 3:22-cv-00456-FDW-DSC   Document 8-2   Filed 12/22/22   Page 12 of 15

Poynt v. Fiserv, Inc., et al.
Tisdale Declaration - Ex. A
Page 000011

# Exhibit 1-Post-Employment Obligations

In consideration of Participant's eligibility to participate and receipt of compensation under the 2021 Plan, and other valuable consideration, Participant understands and agrees to be bound by the terms of this Restrictive Covenant Agreement. This Restrictive Covenant Agreement supplements, and does not replace, other post-employment obligations Participant may be subject to in connection with employment at Fiserv.

Participant agrees that Fiserv, Inc., and its subsidiaries and affiliates (collectively, "the Company") is engaged in a highly competitive business and expends significant money, skill, and time to develop and maintain valuable client relationships, Trade Secrets, and Confidential Information. Participant understands that work for the Company will bring Participant into close contact with many of the Company's clients, Trade Secrets, Confidential Information, and information belonging to the Company's clients as the Company will likely provide Participant access to such information to perform Participant's job duties. Participant also recognizes that any unauthorized disclosure of this information could breach non-disclosure obligations or violate applicable laws or Company policy. Participant further agrees that the covenants in this Restrictive Covenant Agreement are reasonable and necessary to protect the Company's legitimate business interests in its client relationships, Trade Secrets, and Confidential Information.

1. **Non-Disclosure and Return of Property.** Participant agrees to not, directly or indirectly, use, disclose or disseminate any Confidential Information or Trade Secrets pertaining to the Company's business. Upon employment termination (or any time the Company requests), Participant agrees to immediately return to the Company all its materials, Trade Secrets, and Confidential Information, and all copies of such, which are connected with or derived from Participant's employment with the Company. Further, Participant agrees to abide by the terms and conditions of software license, non-disclosure, and confidentiality agreements entered into by the Company ("Third Party Agreements"). This nondisclosure obligation will not apply to any Confidential Information or Trade Secrets which have become generally known to competitors of the Company through no act or omission by Participant. This obligation also will not apply to Participant's communications that are required by law or judicial process (e.g., subpoena) nor does anything in this document preclude Participant from communicating with any government agencies, under applicable whistleblower or other laws. In this document:

    "Confidential Information" means, without limitation, any data, information or documentation (including such that is received by third parties) that is competitively sensitive or commercially valuable and not generally known to the public, including data, information or documentation related or pertaining to: customer lists, business operations, employee listings of any kind, strategy, financial information, pricing, scientific or technical information (whether or not patentable or copyrightable), and any other proprietary information.

    "Trade Secrets" means, without limitation, all information related to the Company's business, customers, short and long-term plans, products, contract terms, alliances, pricing, source code, system documentation, user manuals, training instructions, and other technical developments that are considered Confidential, proprietary, and not generally known to the public. This definition will have the broadest meaning as permitted by law and will extend beyond the definition of "trade secrets" as set forth in the Delaware Uniform Trade Secrets Act.

2. **Defend Trade Secrets Act of 2016 Notice.** Participant agrees and acknowledges that under the Defend Trade Secrets Act, Participant will not be held criminally or civilly liable under any federal or state trade secret law (including the Defend Trade Secrets Act of 2016) for the

Exhibit 1 Post-Employment Obligations – US
Page 1 of 3
60309336v1

Case 3:22-cv-00456-FDW-DSC   Document 8-2   Filed 12/22/22   Page 13 of 15

Poynter v. Fiserv, Inc., et al.
Tisdale Declaration - Ex. A
Page 000012

disclosure of a trade secret that is made in confidence to a federal, state, or local government official or to an attorney solely for the purpose of reporting or investigating a suspected violation of law. Participant also will not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. If Participant files a lawsuit for retaliation by the Company, or any other employer for reporting a suspected violation of law, Participant may disclose any applicable trade secrets to Participant's attorney and may use trade secret information in the court proceeding, as long as Participant files any document containing the trade secrets under seal, and does not disclose the trade secrets, except pursuant to court order.

3. **Non-Solicitation of Employees.** Both during employment and for twelve (12) months after employment terminates, Participant will not recruit, hire, or attempt to recruit or hire, directly or by assisting others, any other Fiserv employee who, during Participant's last twenty-four (24) months of employment with the Company, Participant: (a) supervised (whether directly or indirectly); (b) worked directly with; or (c) learned Trade Secrets or Confidential Information about. For the purposes of this Section 3, "worked directly with" means a material business-related interaction between Participant and the other employee.

4. **Non-Solicitation of Business.** To protect the Company's legitimate business interests in its customer relationships, Trade Secrets, and Confidential Information; Participant agrees that, during employment and for twelve (12) months after Participant's employment terminates; Participant will not, other than on the Company's behalf, solicit, contact, call upon, or attempt to solicit, either directly or indirectly, for any competitive purpose, a Company customer, prospective customer, or customer referral source for the purpose of offering or providing any products or services substantially similar to those offered or provided during Participant's employment. This restriction applies only to a Company customer, prospective customer, or customer referral source with whom Participant had contact or about whom Participant learned Trade Secrets or Confidential Information during the last twenty-four (24) months of employment. For purposes of this paragraph, "contact" means interaction between Participant and the customer, prospective customer, or customer referral source which takes place to further the business relationship, or making sales to, or performing services for the customer, prospective customer or customer referral source on behalf of the Company. As used in this paragraph, a "customer referral source" is any entity with which the Company has entered into agreement with (or is seeking to enter into such agreement) to refer customers to the Company.

5. **Court's Right to Modify Restrictions.** The Company has attempted to limit Participant's activities only to the extent necessary to protect the Company's Trade Secrets, Confidential Information, and customer relationships. Participant agrees that, if the scope or enforceability of this Restrictive Covenant Agreement, or any part thereof, is in any way disputed at any time, a court may modify and enforce the paragraph to the extent it believes to be reasonable under the applicable law and circumstances. Additionally, Participant will be liable to the Company for the Company's attorney's fees if the Company successfully prosecutes a breach of this Agreement.

6. **Injunctive Relief.** Because Participant's services are unique and because Participant will have access to Confidential Information and/or Trade Secrets, money damages will be an inadequate remedy for any breach of this Restrictive Covenant Agreement. In the event of a breach or threatened breach of this Restrictive Covenant Agreement, the Company may, in addition to other rights and remedies existing in its favor, apply to any court of competent jurisdiction for specific performance and/or injunctive relief in order to enforce or prevent any violations of this Restrictive Covenant Agreement.

Exhibit 1 Post-Employment Obligations – US
Page 2 of 3
60309336911

Case 3:22-cv-00456-FDW-DSC   Document 8-2   Filed 12/22/22   Page 14 of 15

Fiserv, Inc, et al.
Tisdale Declaration - Ex. A
Page 000013

7. **Governing Law.** This Restrictive Covenant Agreement will be interpreted and construed under the laws of the State of Wisconsin without regard to the principles of conflicts of law. If any controversy between Fiserv and Participant arises out of, or relates to, these Restrictive Covenants; Fiserv and Participant agree and consent to the exclusive jurisdiction and venue of the state and federal courts of Wisconsin. Should any provision in this Restrictive Covenant Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, such provision immediately will become null and void, leaving the remainder of these Restrictive Covenants in full force and effect.

Exhibit 1 Post-Employment Obligations – US
Page 3 of 3
60309336.1

Case 3:22-cv-00456-FDW-DSC   Document 8-2   Filed 12/22/22   Page 15 of 15

Poyner v. Fiserv, Inc, et al.
Tisdale Declaration - Ex. A
Page 000014